**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DIANE GALVAN,** | § | |
| ***Plaintiff*** | § | |
| | § | **Case No. 5:25-cv-00990-OLG** |
| **V.** | § | **JURY DEMANDED** |
| | § | |
| **THE UNIVERSITY OF TEXAS** | § | |
| **HEALTH SCIENCE CENTER AT** | § | |
| **SAN ANTONIO** | § | |
| ***Defendant*** | § | |

**PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT**

Pursuant to the Court's order dated May 8, 2026, Plaintiff Diane Galvan ("Galvan" or "Plaintiff") files this Second Amended Original Complaint against Defendant The University of Texas Health Science Center of San Antonio ("UTHSCSA" or "Defendant"), and would the Court show as follows:

## A. Parties

1. Plaintiff Diane Galvan brings this action individually. Plaintiff resides in Bexar County, Texas.

2. Defendant The University of Texas Health Science Center at San Antonio is a governmental organization and has been served.

## B. Jurisdiction and Venue

3. This case is brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.

4. This Court has jurisdiction over this matter per 28 U.S.C. § 1331; 29 U.S.C. § 2601; and Title VII, 42 U.S.C. § 2000e.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## C. Exhaustion of Administrative Remedies

6. On or about August 28, 2024, Plaintiff timely filed a Charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination, and retaliation in violation of Title VII.

7. Plaintiff filed her Original Complaint within ninety (90) days after receiving the notice of the right to sue from the EEOC, which was issued on May 23, 2025. This Second Amended Original Complaint relates back to the filing date of said Original Complaint pursuant to Rule 15(c)(1)(B).

## D. Facts

8. On or about November 1, 2021, Defendant hired Galvan.

9. In her last position with Defendant, Galvan served as Senior Program Coordinator.

10. During her employment with Defendant, Galvan's performance evaluations were consistently positive.

11. In her last position with Defendant, Galvan reported directly to Assistant Department Chair Liliana Leader ("Leader"), and Leader reported directly to Assistant Director of Finance & Administration Robyn Carroll ("Carroll").

12. On or about October 3, 2023, during a meeting with Galvan, Leader gave Galvan a directive and stated "[l]et me say it in English." Leader repeated this three times. Galvan immediately opposed this discriminatory behavior even asking Leader if she was discriminating against Galvan. Leader refused to respond and quickly became irate. At Leader's request, Carroll then joined the meeting on October 3, 2023. Notably, at this

meeting, Leader was fully aware that Galvan was complaining that Leader was discriminating against her based on her ethnicity (Mexican-American).

13. On or about October 7, 2023, Galvan submitted a written complaint to Carroll wherein she complained that, *inter alia*, Leader had discriminated against Galvan based on her ethnicity (Mexican-American).

14. Approximately three (3) days later, on or about October 11, 2023, Leader placed Galvan on a Performance Improvement Plan.

15. Moreover, after said complaint, Leader, in conjunction with others, continued to retaliate against Galvan including, but not limited to: assigning her duties that were not her duties; ostracizing her; yelling at her; micromanaging her; investigating her badge access; stalking her in the parking garage and restroom; lying about her; accusing her of being tardy when she was not tardy; applying different standards to her; gossiping about her; attempting to turn others against her; prohibiting her from talking with certain staff members; changing instructions and duties randomly; requiring her to state where she was at all times; assigning random tasks at the last minute; and canceling scheduled meetings with Galvan at the last minute.

16. In addition, around November 2023, Galvan had applied for an internal job in another department (i.e., Senior Project Coordinator in the Department of Medicine ("Senior Project Coordinator")). After the interview, the head of said other department notified Galvan that an offer would be made to her for the Senior Project Coordinator position.

17. Thereafter, in January 2024, a representative from the Human Resources department contacted Galvan, congratulated her on receiving the job offer, and notified her about the increase in pay related to the Senior Project Coordinator position. Said

Human Resources representative stated that before the documentation could be finalized, Galvan had to be released by Leader via an exit interview. After Leader provided feedback regarding Galvan, the offer to Galvan for the Senior Project Coordinator position was revoked.

18. From approximately June 7, 2024 to June 23, 2024, Galvan was approved for and took continuous FMLA leave to care for her father.[1]

19. On at least one occasion, Galvan overheard Leader and Carroll complaining to others about Galvan exercising her rights to FMLA-protected leave.

20. Three days after she returned from FMLA continuous leave to care for her father, on or about June 26, 2024, Carroll issue Galvan a Notice of Intent to Terminate to which Galvan responded as required. The Notice of Intent include two reasons for the action.

21. On or about July 3, 2024, Carroll terminated Galvan.

22. On or about July 9, 2024, Galvan appealed her termination to Dr. Reuben Harris ("Harris") wherein she notified Harris about, *inter alia*, her October 7, 2023 written complaint related to national origin discrimination and her continuous FMLA leave to care for her father, and alleged the termination was retaliatory. On or about July 11, 2024, Harris upheld the termination.

23. On or about July 16, 2024, Galvan submitted her next level of appeal to Dr. Francisco G. Cigarroa ("Cigarroa") wherein she notified Cigarroa about, *inter alia*, her

[1] Of note, before Galvan took continuous FMLA leave to care for her father, she had been approved for FMLA intermittent leave due to her chronic asthma from October 24, 2023 through September 2024, and in fact, she took FMLA intermittent leave when she had asthma flare-ups.

October 7, 2023 written complaint related to national origin discrimination and her continuous FMLA leave to care for her father, and alleged the termination was retaliatory.

24. On July 30, 2024, Galvan's termination was upheld.

25. Notably, with regard to Galvan's termination: (a) the final termination letter issued to Galvan included reasons not included in the Notice of Intent to Terminate; (b) Galvan was not provided with any specific information regarding the first allegation (i.e., related to applications Galvan allegedly failed to keep track of) in the Notice of Intent to Terminate, and made the basis of her termination; (c) the documented evidence (i.e., emails and correspondence) demonstrates that the first allegation in the Notice of Intent, and made the basis of Galvan's termination, is false; (d) Galvan had already been disciplined for the second reason referenced in the Notice of Intent to Terminate, and made the basis of Galvan's termination; (e) Galvan had successfully completed the performance improvement plan referenced in the Notice of Intent to Terminate; and/or (f) with regard to Galvan, Defendant did not comply with its Procedure for Dismissal of Employees.

**E. FMLA Retaliation**

26. Galvan incorporates by reference all of the allegations made above.

27. Galvan is an eligible employee within the meaning of the FMLA. Galvan was employed by Defendant for at least 12 months and for at least 1,250 hours of service during the previous 12-month period. See 29 U.S.C. §2611(2).

28. Galvan was entitled to 12 workweeks of leave per leave year because she was caring for a parent with a serious health condition.

29. Galvan gave Defendant practicable notice when the leave was needed.

30. Galvan provided all necessary information related to her father's serious health condition.

31. It is unlawful for an employer to discriminate or retaliate against an employee for engaging in FMLA-protected activity. 29 U.S.C. §2615(a)(1 and 2).

32. Galvan engaged in FMLA-protected activity by requesting continuous FMLA leave; taking continuous FMLA leave; and asserting her rights under the FMLA.

33. Defendant retaliated against Galvan for engaging in FMLA-protected activity. Specifically, Defendant terminated Galvan in retaliation for her engaging in FMLA-protected conduct and engaging in FMLA-protected continuous leave as evidenced by, *inter alia*, the temporal proximity between her continuous FMLA leave and the termination; Leader's and Carroll's articulated animus against Galvan for taking FMLA leave; Defendant's failure to follow its own procedures related to termination; evidence demonstrating at least one of the reasons made the basis of Galvan's termination is false; evidence demonstrating Galvan had already been disciplined for one of the reasons made the basis of her termination; and Defendant's inconsistent reasons for Galvan's termination.

## F. Retaliation under Title VII

34. Galvan incorporates by reference all of the allegations made above.

35. Pursuant to Title VII, it is an unlawful employment practice for an employer to discriminate against any of its employees because that employee has opposed any practice, which constitutes discrimination based on, *inter alia*, national origin.

36. The acts committed by the officers, agents, servants and/or employees of Defendant in retaliating against Galvan based on her protected activity constitute violations of Title VII.

37. Defendant retaliated and/or discriminated against Galvan for her opposition to a discriminatory practice, including but not limited to her opposition to Leader's harassing behavior based on Galvan's national origin.

38. After Galvan opposed the harassing behavior, Galvan suffered a material adverse employment action, including, but not limited to: (a) the revocation of an offer of another internal position and raise; and (b) termination.

39. Said material adverse employment action would not have occurred "but for" Galvan's opposition to said harassing behavior, and was in direct retaliation for the exercise of Galvan's rights to oppose, object and report harassment based on national origin as evidenced by, *inter alia*, the temporal proximity between her complaint and the job offer revocation; the continued acts of retaliation through the date of the termination; Defendant's failure to follow its own procedures related to termination; evidence demonstrating at least one of the reasons made the basis of Galvan's termination is false; evidence demonstrating Galvan had already been disciplined for one of the reasons made the basis of her termination; and Defendant's inconsistent reasons for Galvan's termination.

## G. Jury Demand

40. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Galvan requests a trial by jury on all issues.

## H. Damages and Prayer for Relief

41. As a direct and proximate cause of the acts as pleaded herein, Galvan has suffered injuries and damages, and respectfully requests and demands damages and judgment as follows:

(a) Actual and consequential damages;

(b) Back pay (wages and benefits);

(c) Front pay;

(d) Lost benefits in the past and future;

(e) Compensatory damages, including, but not limited to emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses;

(f) Liquidated damages;

(g) Pre-judgment interest if, as, and when allowed by law;

(h) reasonable and necessary attorneys' fees and costs (including expert fees), including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals;

(i) Costs of court;

(j) Post-judgment interest; and/or

(k) Any other relief to which Galvan may be entitled, whether in law or equity.

Respectfully submitted,

**THE MORALES FIRM, P.C.**
6243 W. Interstate 10, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

BY: /S/Melissa Morales Fletcher
Melissa Morales Fletcher, *Of Counsel*
Texas Bar No. 24007702
Email: Melissa@themoralesfirm.com

## CERTIFICATE OF SERVICE

I do hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM-ECF system, which will send notification of such filing to all counsel of record.

/S/ Melissa Morales Fletcher
Melissa Morales Fletcher