IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DIANE GALVAN, | § | No. 5:25-cv-00990-DAE |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT SAN ANTONIO, | § | |
| | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant University of Texas Health Science Center at San Antonio's ("Defendant" or "UTHSC") Motion to Dismiss (Dkt. # 25) Plaintiff Diane Galvan's ("Plaintiff" or "Galvan") Second Amended Complaint ("SAC") (Dkt. # 23). The Court finds this matter suitable for disposition without a hearing. After careful consideration of the filings and the relevant law, the Court **DENIES** Defendant's Motion to Dismiss (Dkt. # 25).

BACKGROUND[1]

This case arises out of Plaintiff's employment with Defendant. (Dkt. # 23 at ¶ 8.) Plaintiff was hired on or about November 1, 2021, and last served as Senior Program Coordinator. (Id. at ¶ 9.) She reported directly to Assistant Department Chair Liliana Leader ("Leader") who reported to Assistant Director of Finance & Administration, Robyn Carroll ("Carroll"). (Id. at ¶ 11.) On or about October 3, 2023, Plaintiff claims that Leader gave her a directive, after which she thrice repeated, "Let me say it in English." (Id. at ¶ 12.) After asking Leader if she made that comment discriminatorily, Plaintiff avers that "Leader refused to respond and quickly became irate." (Id.) Shortly thereafter and at Leader's request, Carroll joined the meeting. (See id.)

Then, on October 7, 2023, Galvan alleges that she submitted a written complaint to Carroll, wherein she complained that Leader had discriminated against her based on her ethnicity (Mexican-American). (Id. at ¶ 13.) Approximately three days later, Plaintiff alleges that Leader placed her on a Performance Improvement Plan ("PIP"). (Id. at ¶ 14.) Following the complaint, Plaintiff also contends that she was subject to a variety of retaliatory actions by "Leader, in conjunction with others," including but not limited to:

[1] To the extent that Plaintiff's SAC repeats the same factual allegations as it did in its prior Complaint (see Dkt. # 10), the Court incorporates repeats its prior analysis. (See Dkt. # 22.)

> [A]ssigning her duties that were not her duties; ostracizing her; yelling at her; micromanaging her; investigating her badge access; stalking her in the parking garage and restroom; lying about her; accusing her of being tardy when she was not tardy; applying different standards to her; gossiping about her; attempting to turn others against her; prohibiting her from talking with certain staff members; changing instructions and duties randomly; requiring her to state where she was at all times; assigning random tasks at the last minute; and canceling scheduled meetings with Galvan at the last minute.

(Id. at ¶ 15.)

Plaintiff further alleges that around November 2023, she interviewed internally for a position in another department—the Senior Project Coordinator position in the Department of Medicine. (Id. at ¶¶ 17–18.) Plaintiff alleges that she was offered the position in January of 2024 and was told it would involve a pay increase. (Id.) However, Plaintiff contends that she was told by the Human Resources representative that before the documentation could be finalized for the new position, Plaintiff had to be released by Leader via an exit interview. (Id. at ¶ 17.) Plaintiff claims that after Leader provided feedback regarding Plaintiff, Plaintiff's offer of employment was revoked. (Id.)

From approximately June 7, 2024, to June 23, 2024, Plaintiff was approved for and took continuous Family and Medical Leave Act ("FMLA") leave to care for her ill father. (Id. at ¶ 18.) Plaintiff had previously taken FMLA intermittent leave for her chronic asthma. (Id. at ¶ 18 n.1.) Plaintiff claims to have

overheard Leader and Carroll complaining to others about Plaintiff exercising her FMLA rights on at least one occasion. (Id. at ¶ 19.)

Three days after she returned from FMLA leave, on or about June 26, 2024, Plaintiff received a Notice of Intent to Terminate from Carroll, which included two reasons for the action.[2] (Id. at ¶ 20.) On or about July 3, 2024, Plaintiff claims that Carroll terminated her based on said Notice of Intent to Terminate. (Id.) Plaintiff alleges she appealed the termination to Dr. Reuben Harris, and then to Dr. Francisco G. Cigarroa. (See id. at ¶¶ 22–23.) In each appeal, Plaintiff alleges that she informed both decisionmakers about her "October 7, 2023, written complaint related to national origin discrimination and her continuous FMLA leave to care for her father, and alleged the termination was retaliatory." (Id. at ¶ 22; see id. at ¶ 23.) The termination was ultimately upheld on July 30, 2024. (Id. at ¶ 24.)

Plaintiff filed the SAC on May 18, 2026, bringing causes of action for retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Dkt. # 23 at 1.) Defendant filed the instant Motion to Dismiss on

---

[2] Galvan's SAC identifies neither of these two reasons, but she claims that "the first allegation in the Notice of Intent, and made the basis of Galvan's termination is false" and that "Galvan had already been disciplined for the second reason referenced in the Notice of Intent to Terminate, and made the basis of Galvan's termination." (See Dkt. # 23.)

May 28, 2026. (Dkt. # 25.)[3] Plaintiff then filed a Response in Opposition on June 9, 2026. (Dkt. # 26.) Defendant filed its Reply on June 12, 2026. (Dkt. # 27.)

In its prior Order Granting Defendant's Motion to Dismiss, the Court held that "Plaintiff ha[d] not pleaded enough facts to allow for the reasonable inference that Leader, or any other unnamed decisionmaker, had knowledge of her protected activity." (Dkt. # 22 at 17.) Therefore, it reasoned, "Plaintiff [could not] establish a causal connection between her protected activity and any actionable adverse employment actions." (Id.)

## LEGAL STANDARD[4]

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When analyzing a motion to dismiss for failure to state a claim, the Court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)). The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

[3] Notably, Defendant seeks to dismiss only the Title VII claim. (See id. at 2.)
[4] As with the Court's prior Order Granting Motion to Dismiss with Leave to Amend, the same law controls its analysis for purposes of this Order. (See Dkt. # 30.)

motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56; cf., e.g., Lowy v. Daniel Def., LLC, 167 F.4th 175, 193 (4th Cir. 2026) ("Plaintiffs are not required to prove their case in the complaint." (citation modified)).

In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See Twombly, 550 U.S. at 556–57. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must

plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, "a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011) (quoting Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009)). And, when a 12(b)(6) motion is granted, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

But where, after being granted leave to amend, a plaintiff has failed to meet her Rule 8 pleading burden, the Fifth Circuit disfavors continuing to grant leave to amend. See Goldstein v. MCI WorldCom, 340 F.3d 238, 255 n.6 (5th Cir. 2003) (warning "against this kind of 'wait and see' approach to requesting leave to amend" (citing Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir.2002) ("A district

court's responsibilities do not include instructing ostensibly sophisticated . . . counsel how to plead an actionable complaint.") (citation modified))).

## DISCUSSION

UTHSC again moves to dismiss Galvan's Title VII national origin retaliation claim on the basis that she has not pled sufficient facts to state a claim upon which relief can be granted. (Dkt. # 25 at 2.) Defendant also renews its argument that Plaintiff's SAC, like her prior pleadings, does not allege sufficient facts that would plausibly show a causal relationship between her protected activity (i.e. making a complaint to Carroll) and her termination. The Court focuses its review on the new allegations that Plaintiff included in the SAC. (See Dkt. # 23 at 8–22.) The controlling law remains the same as the law the Court identified in its prior Order. (See Dkt. # 22 at 11–16.)

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Hamilton v. Dallas Cnty., 79 F.4th 494, 497 (5th Cir. 2023) (en banc) (citation modified).

Plaintiff alleges that she complained to Carroll of national origin discrimination by Leader on October 7, 2023. (See Dkt. # 23 at ¶ 13.) As a

consequence of this internal complaint, she claims that UTHSC retaliated against her in violation of Title VII by (1) revoking a job offer for another position in January 2024, and (2) terminating her on July 3, 2024. (See Dkt. # 23 at ¶¶ 14–21.)

To survive a motion to dismiss a Title VII retaliation claim, a plaintiff only needs to plausibly allege facts going to the ultimate elements of the claim: (1) she participated in an activity protected by Title VII, (2) her employer took an adverse employment action against her, and (3) a causal link exists between the protected activity and the adverse employment action. See Wright v. Union Pac. R.R. Co., 990 F.3d 428, 433 (5th Cir. 2021).

Defendant moves to dismiss on the basis that Plaintiff has failed to adequately allege a causal link between her protected activity and the alleged adverse actions. (Dkt. # 25 at 2–3.) With respect to both the revocation of Plaintiff's job offer and her later termination, Defendant repeats its prior arguments that Plaintiff has failed to allege that anyone with actual knowledge of Plaintiff's protected activity was involved in the decision-making process to revoke the job offer or terminate her and that the temporal proximity between the acts, standing alone, is legally insufficient to establish causation. (Id. at 4–5; cf. Dkt. # 12 at 6, 8.) Plaintiffs counters she has pleaded that: "(1) Galvan opposed the discriminatory behavior directly to Leader; (2) Leader was aware of Galvan's

protected activity; and (3) after Leader provided feedback regarding Galvan, the previously offered position and pay increase was revoked." (Dkt. # 26 at 7; cf. Dkt. # 23 at ¶¶ 11–13, 16–17, 38.) Although Defendant's Motion again focuses on the causation element, the Court will assess each element of a Title VII retaliation claim, focusing on adverse employment action and causation.[5]

A. Adverse Employment Actions

Like her prior filings, Plaintiff's Second Amended Complaint focuses on two alleged adverse employment actions: "(a) the revocation of an offer of another internal position and raise; and (b) termination." (Dkt. # 23 at ¶ 38.) Plaintiff's Response characterizes these actions as the result of her protected activity; she argues she has "plead[ed] that as a result of her protected activity she suffered continued actions through the date of her termination that could dissuade a reasonable worker from opposing actions that violate Title VII." (Dkt. # 26 at 7; cf. Dkt. # 23 at ¶ 15.)

In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v.

[5] Filing an internal written complaint of unlawful discrimination is a protected activity. Rodriquez v. Wal-Mart Stores, Inc., 540 F. App'x 322, 328 (5th Cir. 2013).

White, 548 U.S. 53, 68 (2006) (citation modified). However, the Court cannot credit a Plaintiff's legal conclusions, so it will look to the four corners of Plaintiff's complaint. See Iqbal, 556 U.S. at 678 Plotkin, 407 F.3d at 696.

1. Revocation of Job Offer

Even under the heightened standard for adverse employment actions consisting of "ultimate employment decisions," Plaintiff's revocation of her job offer constitutes an adverse employment action because the new position would have involved an increase in pay. (See Dkt. # 23 at ¶ 17.) "While the denial of a promotion qualifies as an adverse employment action, the denial of a 'purely lateral transfer' does not." Lugo v. Barr, No. EP-19-CV-353, 2020 WL 10357001, at *4 (W.D. Tex. Sep. 3, 2020) (quoting Alvarado v. Tex. Rangers, 492 F.3d 605, 612 (5th Cir. 2007)). In some cases, "the denial of a lateral transfer may be the objective equivalent of the denial of a promotion . . . ." Alvarado, 492 F.3d at 614. The test is whether, under the totality of the circumstances, the "position sought was objectively better[,]" and includes factors such as increase in compensation. Id. at 614 & n.8. Plaintiff's SAC states that upon receiving the offer, she was notified about "an increase in pay related to the Senior Project Coordinator position." (Dkt. # 23 at ¶ 17.) Therefore, the revocation of her offer that involved an increase in compensation constitutes an adverse employment action. Cf. Lugo, 2020 WL 10357001, at *4.

2. Termination

Plaintiff's termination on or about July 3, 2024, (Dkt. # 23 at ¶ 21), constitutes an adverse employment action. See, e.g., E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 695 (5th Cir. 2014); McLin v. Twenty-First Jud. Dist., 79 F.4th 411, 418 n.30 (5th Cir. 2023).

3. Placement on PIP

Three days after her discrimination complaint, Plaintiff alleges she was placed on a PIP. (Id. at 2.) Although placement on a PIP does not constitute an adverse employment action in the discrimination context, it may be sufficient in the retaliation context. In Ray v. Tandem Computers, Inc., for example, the Fifth Circuit concluded that placement on a PIP, coupled with complaints to human resources and the termination of employment, was sufficient for the plaintiff to establish a *prima facie* case of retaliation. See 63 F.3d 429, 435 (5th Cir. 1995). Here, Plaintiff submitted a written complaint of discrimination, was placed on a PIP, and was eventually terminated. Thus, the Court finds that Plaintiff's has sufficiently pleaded that her placement on a PIP constitutes an adverse action as it may dissuade a reasonable worker from making a charge of discrimination. See Ray, 63 F.3d at 435.

4. Other Retaliatory Acts

Plaintiff further alleges that following the complaint, Leader and others continued to retaliate against her. (See Dkt. # 23 at ¶ 15; see also supra (reproducing the full allegations).) The Court finds that, considered in their totality, the above conduct plausibly alleges adverse employment action in support of Plaintiff's retaliation claim. See Ray, 63 F.3d at 435 n.8; see also Iqbal, 556 U.S. at 678 (clarifying the pleading standard for plausibility Rule 8).

B. Causation

At the pleading stage, a plaintiff does not need to "demonstrate that the protected activity was a but-for cause of the adverse employment action." Lopez v. AT&T Mobility Servs. LLC, 767 F. Supp. 3d 406, 435 (W.D. Tex. 2025) (citing Jenkins v. City of Dallas, 717 F. Supp. 3d 528, 540 (N.D. Tex. 2024)). Instead, a plaintiff must show only "that the two 'are not completely unrelated.'" Id. (quoting Jenkins, 717 F. Supp. 3d at 540).

"[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer *knew* about the employee's protected activity." Manning v. Chevron Chem. Co., 332 F.3d 874, 883 (5th Cir. 2003) (emphasis added). Generally, this requires some showing that the decisionmaker—the individual "who actually made the decision or caused the decision to be made"—was aware of the activity. Russell v. McKinney Hosp.

Venture, 235 F.3d 219, 227 (5th Cir. 2000). "A decisionmaker's awareness may be established by circumstantial evidence." Equal Emp. Opportunity Comm'n v. EmCare, Inc., 857 F.3d 678, 683 (5th Cir. 2017).

Whereas Plaintiff's First Amended Complaint did not identify to "who[m] she submitted her written complaint . . . or any other facts that would allow the Court to infer that Leader or any other decisionmaker had knowledge of the complaint," her SAC does both. (Dkt. # 22 at 16; cf. Dkt. # 23 at ¶¶ 11–13, 16–17, 38.) And although the Court previously contrasted Plaintiff's First Amended Complaint with Giramur v. Wormuth to illustrate its pleading deficiencies, that case now demonstrates why Plaintiff has stated a claim upon which relief can be granted. Cf. No. 5:22-CV-529, 2023 WL 9645252, at *7 (W.D. Tex. Dec. 12, 2023), report and recommendation adopted, No. SA-22-CV-529, 2024 WL 584461 (W.D. Tex. Feb. 13, 2024). As here, in Giramur, the court found that the plaintiff's complaints to her first and second-level supervisors were sufficient to permit the reasonable inference that the defendant knew about her protected activity. See id. The court relied on a case from the Southern District of Texas in which the court found that "'complaining . . . to the human resources manager, the student services director, the dean of student services, and the site director [wa]s enough to infer that the employer had knowledge of the employee's protected activity—even though [the plaintiff] d[id] not state

specifically who fired her.'" Id. (citing Briceno-Belmontes v. Coastal Bend Coll., No. 2:20-CV-00114, 2022 WL 673854, at *7 (S.D. Tex. Mar. 5, 2022)).

In contrast, Plaintiff merely alleges that she submitted a written complaint "to Defendant" without specifying who, and based on that factual allegation alone, it appears that she only complained once. (See Dkt. # 10 at 2.) Moreover, Plaintiff now identifies at least four individuals whom she alleges were either directly or partially responsible for her termination. (See Dkt. # 23 at ¶¶ 14, 20–23.) Although Plaintiff's prior pleading "identified Leader as at least partially responsible for the revocation of her job offer and the other retaliatory acts," this Court found deficiency in the fact that "Plaintiff did not name which decisionmaker was responsible for her placement on a PIP or her termination." (Dkt. # 22 at 16.) Now, however, the Court is satisfied that Plaintiff has identified UTHSC staff—Leader, Carroll, and Doctors Harris and Cigarroa—that played a part in the respective adverse employment actions. (See generally Dkt. # 23.) Accordingly, the Court finds that Plaintiff has now pleaded enough facts to allow for the reasonable inference that Leader, Carroll, and Doctors Harris and Cigarroa, had knowledge of her protected activity. As such, but unlike before, Plaintiff has now sufficiently pleaded a causal connection between her protected activity and actionable adverse employment actions.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Dismiss (Dkt. # 25).[6]

**IT IS SO ORDERED**.

**DATED**: San Antonio, Texas, October 13, 2026.

David Alan Ezra
Senior United States District Judge

[6] The Court "cannot now predict what the facts will be either on a trial or developed in advance of trial which might demonstrate the absence of a genuine controversy of a material fact warranting summary judgment." United States v. Bowen, 290 F.2d 40, 41 (5th Cir. 1961); cf. J.T. v. Uplift Educ., No. 3:20-CV-3443, 2022 WL 283022, at *2 n.3 (N.D. Tex. Jan. 31, 2022).